# EXHIBIT A

```
          UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF FLORIDA


         CASE NO. 07-20944-CV-JORDAN/TORRES


FARMAMEDICA, S.A., a foreign
company,

       Plaintiff,

vs.

ANA ELOISA ALFARO DE MARON
d/b/a COMBISA LABORATORIOS,

       Defendant.
_____/


                   - - -
         DEPOSITION OF THE WITNESS
                AMAURY CRUZ
          TAKEN BY THE PLAINTIFF
     AND CROSS-NOTICED BY THE DEFENDANT
                   - - -


     1000 Northwest 57th Court, Suite 600
     Miami, Florida
     Thursday, October 21, 2010
     9:57 a.m. - 2:08 p.m.
     Before Janette P. Moreno, RMR, CRR, CLR
     and Notary Public, State of Florida
```

APPEARANCES:

On behalf of the Plaintiff:

    MICHELLE MEJIA, Esq.
    SANDLER, TRAVIS & ROSENBERG, P.A.
    1000 NW 57th Court, Suite 600
    Miami, Florida  33126
    Phone: 305.267.9200  Fax: 303.267.5155
    E-mail: mmejia@strtrade.com


APPEARANCES Continued on Page 2.

1          THE REPORTER: Sure.
2          (Exhibit No. 1 was marked for
3     identification by the reporter.)
4     Q.  (BY MS. MEJIA)  In your time entry here,
5     ACRUZ 34, you state you had a telephone conference
6     with G. Marón regarding the status of the case.
7     Research Offer of Judgment in this connection.
8          Did you discuss filing an Offer of
9     Judgment with Mr. Marón?
10    A.   Yes.
11    Q.   And what was the substance of that
12    discussion?
13    A.   The substance of the discussion was that
14    Mr. Marón had told me at one point that he had
15    only made token use of the trademark Super Vital
16    Forte in order to obtain the registration in the
17    United States and that he wasn't really interested
18    in that trademark and, moreover, had not sold and
19    was not planning to sell Super Vital Forte in the
20    United States.
21         So we then -- or I asked him: Why are
22    you then insisting so much on fighting this case
23    so much, which seemed to be an obsession with
24    him.
25         And he didn't have a good answer for

```
 1    that.  So I proposed that we settle the case, as
 2    we had been trying to do for a long time.
 3              And he objected to some of the terms of
 4    the settlement agreements that we had been
 5    interchanging back and forth between the
 6    plaintiff's attorney and myself and himself.
 7              And he didn't like some of them.  So I
 8    said:  Well, why don't we just then do an Offer of
 9    Judgment which doesn't have all of that language
10    that you're objecting to, which, to him, it
11    appeared to be humiliating.
12              So I said:  We can eliminate that
13    language.  We can bypass all of that stuff so you
14    don't feel humiliated and just make an Offer of
15    Judgment and see if they accept it, and if they
16    don't, then they may be liable for attorneys'
17    fees.  This is a strategic move that would help.
18              That was basically the context of that,
19    that type of conversation.
20         Q.   And did he agree to you filing an Offer
21    of Judgment?
22              MR. MILBRATH:  Objection.  Form.
23    Leading.
24              THE WITNESS:  Yes.
25              I should add that he then changed his
```

1  well as this one, took place after the Offer of
2  Judgment.
3       Q.  Okay.  So this time entry rejecting
4  settlement is not in reference to the Offer of
5  Judgment?
6       A.  No.  The Offer of Judgment had been done
7  by then.
8       Q.  Okay.  And then your entry here on
9  8-16-2007 on the same document, a couple lines
10 down, says:  Review notice of acceptance by
11 Farmamedica of Combisa's formal Offer of Judgment.
12 Telephone conference with Mr. Marón.
13           What was the substance of that telephone
14 conference with Mr. Marón?
15      A.  It was to advise Mr. Marón that the
16 plaintiff had accepted the Offer of Judgment and
17 to emphasize what the terms of the offer were and
18 that he needed to comply with that.
19      Q.  So you discussed all the terms of the
20 Offer of Judgment with him?
21      A.  Yes, plus the fact that there was a
22 remaining issue concerning cost which the Court
23 would decide later.
24      Q.  Is it your understanding from that
25 telephone call that Mr. Marón understood the terms

1   mess, stuff like that.
2       Q.  Okay.  After the acceptance of the Offer
3   of Judgment that you communicated with Mr. Marón,
4   did you then communicate with him when a judgment
5   was entered?
6       A.  Yes.
7       Q.  Did you send a copy of the judgment to
8   Mr. Marón?
9       A.  Yes.
10      Q.  Did your representation of Ms. Marón
11  conclude when this case was closed when judgment
12  was entered?
13      A.  Under the law, the attorney concludes
14  when the case is closed.  However, he continued to
15  use my services for other matters.
16      Q.  What were those other matters?
17      A.  There was an issue concerning the
18  collection of monies owed to him by a man called
19  Horacio Carballo in Maryland, and there may have
20  been a couple of other things I don't remember
21  now, but that's the one that stands out.
22      Q.  Did you assist Ms. Marón or Mr. Marón in
23  the filing of any trademarks after this case was
24  closed?
25      A.  No.

1  that came from Mrs. Marón, that check?
2       A.  I would say it indicates so.
3       Q.  Okay.  Did Combisa pay all your
4  attorneys' fees, all your bills?
5       A.  Yes.
6       Q.  And do you know who usually wrote out
7  those checks?
8       A.  Mr. Marón.
9       Q.  Okay.
10      A.  In fact, this check here is, I believe,
11 signed by him.  That's his signature
12 (indicating).
13      Q.  Did you have any personal incentive or
14 motive to settle this case without the knowledge
15 of Mr. or Ms. Marón?
16      A.  Of course not.
17      Q.  And being the defendant's attorney at
18 the time that this litigation began, did you
19 understand the full allegations of the Complaint
20 of Farmamedica and understand the allegations that
21 were at issue here?
22      A.  Of course.
23      Q.  Okay.  Was it your understanding that
24 the relief sought by Farmamedica was to prohibit
25 Combisa from using any words in its packaging?